UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                            2:12-cr-114-FtM-29UAM

DANIEL CHARLES KIRK

_____

**ORDER REGARDING COURT'S SENTENCING DETERMINATIONS**

This matter came before the Court on October 24, 2013, for a sentencing hearing. The Court heard arguments on defendant's objections to the Presentence Report. Pursuant to Fed. R. Crim. P. 32(i)(3)(B), the Court makes its determinations regarding these pending objections to the Presentence Report.

**1. Paragraphs 14 and 25, Stolen Firearm Enhancement:** The Presentence Report states that the firearm defendant was convicted of possessing had been stolen from his estranged wife, and adds two levels to his base offense level. Defendant objects that he did not steal the firearm, and since "stolen" is not defined in this Sentencing Guidelines provision, the rule of lenity requires the two levels not to be added.

Section 2K2.1(b)(4)(A) provides for a 2 level increase if any firearm was stolen. The Commentary to the Guidelines states that the enhancement "applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen." U.S.

Sentencing Guidelines Manual (U.S.S.G.) § 2K2.1 cmt. n.8(B). Whether a firearm was "stolen" for purposes of § 2K2.1(b)(4)(A) is a question of fact. United States v. Echols, 404 F. App'x 351, 351 (11th Cir. 2010). When a defendant objects to a factual matter, the Government bears the burden of establishing the disputed fact by a preponderance of the evidence. United States v. Agis–Meza, 99 F.3d 1052, 1055 (11th Cir. 1996).

While Section 2K2.1(b)(4)(A) does not define "stolen", well established federal law gives it a broad meaning which includes all felonious takings with intent to deprive the owner of the rights and benefits of ownership. United States v. Turley, 352 U.S. 407, 417 (1957)(interpreting National Motor Vehicle Theft Act); United States v. Bell, 678 F.2d 547, 548-49 (11th Cir. 1982)(interpreting federal bank robbery statute). The Eighth Circuit recently stated that:

> [w]hile intent to permanently deprive is an element of common-law larceny, the term "stolen" is not necessarily limited to that definition in federal criminal statutes. See United States v. Turley, 352 U.S. 407, 411 (1957). This court previously evaluated the "stolen" aspect of a stolen firearm under the sentencing guidelines, determining that all wrongful takings satisfy the inquiry—regardless of whether the taking meets the definition of common-law larceny. United States v. Bates, 584 F.3d 1105, 1109 (8th Cir. 2009); accord United States v. Walters, 269 F.3d 1207, 1218 (10th Cir. 2001); United States v. Jackson, 401 F.3d 747, 749–50 (6th Cir. 2005). When evaluating the meaning of "stolen," the Supreme Court requires that the term be analyzed in the context in which it appears. Turley, 352 U.S. at 413. In Bates, this court relied on a Third Circuit opinion in holding that the sentencing guidelines required a broad meaning of "stolen" for firearm charges. Bates, 584 F.3d

at 1109, citing <u>United States v. Mobley</u>, 956 F.2d 450, 454 (3d Cir. 1992). In <u>Mobley</u>, the court analyzed the crimes that specific guideline was adopted to punish: violations of the Gun Control Act. <u>Mobley</u>, 956 F.2d at 453-54. Specifically, and critically, the analysis included the two statutes violated here: 18 U.S.C. § 922(g) and (j). <u>Id.</u> The court found that these crimes, in conjunction with the sentencing guidelines, created a regulatory scheme, whereby Congress intended to restrict the trade of stolen firearms. <u>Id.</u> at 454. Section 922(g) and (j) are closely intertwined with the sentencing guidelines concerning stolen firearms. This court's determination that all wrongful takings (regardless of common-law larceny) constitute "stolen" applies equally to § 922(g) and (j).

<u>United States v. Tyerman</u>, 701 F.3d 552, 565 (8th Cir. 2012). <u>See also</u> <u>United States v. Pazour</u>, 609 F.3d 950, 952 (8th Cir. 2010). Thus, the rule of lenity is not applicable.

At trial, Melissa Ann Kirk, defendant's estranged wife, testified that she owns a Winchester .12 gauge shotgun which she had inherited when her father passed away in 2008; she married defendant in June 2010; she separated from defendant in December 2011, and was living in Lehigh Acres without him; she took the shotgun with her when she moved to Lehigh Acres, and kept the shotgun unloaded in an unlocked closet of the master bedroom; defendant visited her on 4 or 5 occasions, and had been alone in the master bedroom; on or about February 1, 2012, she looked for the shotgun in the closet and discovered it was gone; she identified the shotgun possessed by defendant during the February 1, 2012, offense as being her missing shotgun; and defendant did not have her permission or authority to take the shotgun from her house.

The shotgun inherited by Melissa Ann Kirk was possessed and used by defendant on February 1, 2012, during the incident charged in the Indictment. The Court finds by at least a preponderance of the evidence that between December 2011 and February 1, 2012, defendant took the shotgun from the master closet of his estranged wife's bedroom without her knowledge or consent and without any authority, and retained the firearm without his wife's knowledge or consent or any lawful authority through the time of the events of this case. The Court finds that the firearm was "stolen" within the meaning of this Sentencing Guidelines provision. E.g., United States v. Kenney, 283 F.3d 934 (8th Cir. 2002) (applying enhancement when defendant removed firearms from parents' home without permission and later pawned the firearms). Therefore, defendant's objection to these paragraphs is **OVERRULED**.

**2. Paragraphs 7, 21, and 28 Reckless Endangerment During Flight**: The Presentence Report adds a two level increase to the base offense level based upon the reckless endangerment during flight enhancement. Defendant objects to this enhancement.

Section 3C1.2 of the U.S. Sentencing Guidelines provides: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." The government must prove facts justifying the enhancement by a preponderance of the evidence. United States v. Gonzalez, 71 F.3d

819, 836 (11th Cir. 1996). Section 3C1.2 applies only where a defendant knows he is fleeing from a law enforcement officer who is in pursuit of him. United States v. Martikainen, 640 F.3d 1191, 1194 (11th Cir. 2011). Flight alone, however, is insufficient to warrant this enhancement. United States v. Washington, 434 F.3d 1265, 1267 (11th Cir. 2006). During flight, the defendant must have created a substantial risk of death or serious bodily injury to another, and must have done so in at least a reckless manner. "Reckless" is defined as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.C. § 3C1.2 cmt. n.2 (adopting definition of "reckless" in the commentary to section 2A1.4 (Involuntary Manslaughter)).

Section 3C1.2 can apply to this case because the facts clearly establish that defendant was fleeing from persons whom he knew were law enforcement officers. At the sentencing hearing, defense counsel conceded that defendant's conduct was reckless, but asserted that a preponderance of the evidence did not establish that defendant's conduct created a substantial risk of death or serious bodily injury to another. The Court agrees that defendant's conduct was reckless, and finds that it did indeed create a substantial risk of death or serious bodily injury to another.

While the officers showed commendable restraint during the high speed chase, defendant did not.  It is defendant's conduct, not the officers' conduct, which is considered to determine if there was a substantial risk of death or serious bodily injury to another.  <u>United States v. Wilson</u>, 392 F.3d 1243, 1247 (11th Cir. 2004).  Defendant fled from officers in a motor vehicle in a commercial area containing local drinking establishments just as they were closing.  Defendant drove at a high rate of speed not only in non-residential areas, but drove into and out of a residential area at high rates of speed reaching approximately 80 miles per hour in a 30 mile per hour area.  Defendant drove on multiple residential streets in a residential area which had only two streets which allowed ingress or egress, and was an area where people were likely to be found even at that early morning hour.  Therefore, defendant's objection to these paragraphs is **OVERRULED**.

**3. Paragraphs 33, 34, 42-50, Armed Career Criminal Act Designation**: Defendant objects to the Armed Career Criminal Act (ACCA) designation on the grounds that none of seven his burglary convictions qualify as predicate convictions, and if they are qualifying convictions the government cannot show they were committed on different occasions.  The Court finds otherwise.

A defendant convicted of possession of a firearm by a convicted felon under 18 U.S.C. § 922(g) generally faces a maximum statutory penalty of ten years imprisonment.  18 U.S.C. §

924(a)(2). However, a defendant who has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another" shall be imprisoned for not less than fifteen years. 18 U.S.C. § 922(e)(1). It is undisputed that defendant had been convicted of seven prior burglary offenses under Florida law prior to the offense conduct in this case. The issue is whether any of the seven burglary convictions constitute a "violent felony."

A "violent felony" under the ACCA is defined to mean:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
>
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B). The parties agree that all of defendant's burglary convictions were punishable by imprisonment for a term exceeding one year. Under 18 U.S.C. § 924(e)(2)(B), defendant's burglary convictions will be considered a "violent felony" if (1) the Florida burglary statute "has as an element the use, attempted use, or threatened use of physical force against the person of another" within the meaning of § 924(e)(2)(B)(i); (2) a

-7-

conviction under the Florida burglary statute is a "burglary" within the meaning of § 924(e)(2)(B)(ii); or (3) a conviction under the Florida burglary statute is an offense "that presents a serious potential risk of physical injury to another" within the meaning of the residual clause of § 924(e)(2)(B)(ii). The Court first examines the Florida burglary statute, then each potential basis for a Florida burglary to be a "violent felony."

**(a) Florida Burglary Statute**

The Florida burglary statute, Fla. Stat. § 810.02, was amended on July 1, 2001, to change the definition of "burglary." "For offenses committed on or before July 1, 2001, 'burglary' means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." Fla. Stat. § 810.02(1)(a). However,

> For offenses committed after July 1, 2001, "burglary" means:
>
> > 1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
> >
> > 2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
> >
> > > a. Surreptitiously, with the intent to commit an offense therein;
> > >
> > > b. After permission to remain therein has been withdrawn, with the

>intent to commit an offense therein; or
>
>c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.

Fla. Stat. § 810.02(1)(b). The Florida legislature amended the burglary statute to overrule Delgado v. State, 776 So. 2d 233 (Fla. 2000), which had held that the "remaining in" language of the burglary statute was only applicable when there was consensual entry by the accused and the "remaining in" was done surreptitiously. Fla. Stat. § 810.015. It is undisputed that all of defendant's burglaries were committed after July 1, 2001.

**(b) Element of Physical Force**

A conviction under the Florida burglary statute will constitute a conviction for a "violent felony" if the Florida burglary statute "has as an element the use, attempted use, or threatened use of physical force against the person of another" within the meaning of § 924(e)(2)(B)(i). The Florida Supreme Court has held that neither forced entry nor entry without consent are requisite elements of the pre-July 2001 burglary statute. Jimenez v. State, 810 So. 2d 511, 512 (Fla. 2001). Nothing in the July 2001 amendment adds an element of use, attempted use, or threatened use of force to the elements of burglary under Florida law. E.g., Wilkes v. State, ___ So. 3d ___, 2013 WL 4822010, at *3 (Fla. 4th DCA 2013)("The statutory elements of this crime [attempted burglary of a structure] do not require proof of the use or threat of use of

physical force or violence.") Accordingly, defendant's seven burglary convictions do not qualify as violent felonies under § 924(e)(2)(B)(i).

**(c) ACCA "Burglary"**

While defendant concedes he has seven burglary convictions under the Florida statute, he asserts that none are "burglary" convictions within the meaning of the ACCA. Indeed, defendant asserts that in light of Descamps v. United States, 133 S. Ct. 2276 (2013), no Florida burglary conviction committed after July 1, 2001, qualifies as a predicate "burglary" conviction under the ACCA.

In Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court gave definition to "burglary" as used in the ACCA. Taylor adopted the "generic, contemporary meaning of burglary," holding that "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Id. at 598-99. This definition of "burglary" under the ACCA has been consistently followed. United States v. Rainer, 616 F.3d 1212, 1213-14 (11th Cir. 2010)(citing cases).

Perhaps more important than giving definition to the term "burglary," Taylor also determined the methodology for determining

whether a particular conviction was an ACCA burglary. Taylor mandated that a sentencing court use a "formal categorical approach" which looked only to the elements of a prior offense, not to the particular facts underlying the conviction. Taylor, 495 U.S. at 600, 602. Descamps summarized the Taylor ramifications as follows:

> If the relevant statute has the same elements as the "generic" ACCA crime, then the prior conviction can serve as an ACCA predicate; so too if the statute defines the crime more narrowly, because anyone convicted under that law is "necessarily . . . guilty of all the [generic crime's] elements." But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form. The key, we emphasized, is elements, not facts. So, for example, we held that a defendant can receive an ACCA enhancement for burglary only if he was convicted of a crime having "the basic elements" of generic burglary—i.e., "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."

Descamps, 133 S. Ct. at 2283 (citations to Taylor omitted). A sentencing court can utilize a "modified categorical approach" when a prior conviction involves a "divisible statute," i.e., a statute which comprises multiple, alternative versions of the crime. Id. at 2284. When such a statute is involved, the sentencing court may consult "a limited class of documents to determine which of the statute's alternative elements formed the basis of the defendant's prior conviction." Id. at 2284. After making this determination, the sentencing "court can then do what the categorical approach demands: compare the elements of the crime of conviction (including

-11-

the alternative element used in the case) with the elements of the generic crime." Id. at 2281. When the statute is "indivisible" (because it does not contain alternative elements) and criminalizes a broader swath of conduct than the relevant generic offense, Descamps held that a sentencing court may not consult those additional documents. Id. 2281-83.

The Florida burglary statute is a divisible statute, unlike the California statute being examined in Descamps. It is divisible both as to the type of location being burglarized, United States v. Weeks, 711 F.3d 1255, 1262-63 (11th Cir. 2013), and as to whether the offense is the unlawful entry or the "remaining in" portion of the statute. As a divisible statute, the Court may utilize "Shepard-approved" documents to determine if the offense of conviction was generic burglary. The Informations and Judgments for all of defendant's burglary convictions establish that defendant was charged with and convicted of burglary of a dwelling. Government Exhibits 1 through 14. Thus, defendant was convicted of generic burglary each time.

Defendant argues that Descamps changed the concept of generic burglary under the ACCA. The Court disagrees. The Court in Descamps continued to rely upon Taylor, whose definition of generic burglary was followed in Shepard and James v. United States, 550 U.S. 192 (2007). The issue before the Descamps was not the scope of a generic burglary, but the use of the modified categorical approach with an indivisible statute.

**(d) Residual Clause**

In <u>James v. United States</u>, 550 U.S. 192 (2007), the Supreme Court held that an attempted violation of the pre-July, 2001 version of Florida's burglary statute constituted a violent felony under the residual provision of the ACCA, i.e., it was a crime that "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). <u>See</u> also <u>United States v. Matthews</u>, 466 F.3d 1271, 1275 (11th Cir. 2006). The Court finds that even if not "burglary" within the meaning of the ACCA, each completed burglary conviction at issue in this case was likewise a violent felony under the residual clause. <u>United States v. Wheeler</u>, 443 F. App'x 831, 833-34 (11th Cir. 2011).

**(e) Different Occasions**

Under the ACCA, the prior violent felonies must have been "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). "[W]hether crimes were committed on occasions different from one another, within the meaning of the ACCA" is a question of law that we review de novo. <u>United States v. Canty,</u> 570 F.3d 1251, 1254–55 (11th Cir. 2009) (quotation marks omitted). The government bears the burden of showing that "the three previous convictions arose out of a separate and distinct criminal episode." <u>United States v. Sneed</u>, 600 F.3d 1326, 1329 (11th Cir. 2010) (quotation marks omitted). This determination is made by the sentencing court

using Shepard-approved documents. United States v. Overstreet, 713 F.3d 627, 635 (11th Cir. 2013).

The Information for each conviction charges that defendant unlawfully entered or remained in a dwelling located at or in the vicinity of a certain specified address owned or in the custody of a named person. All of the addresses and all of the owners/custodians are different. Three of the locations were identified as being in Punta Gorda, and four were identified as being in Port Charlotte. One burglary was alleged to have been on or about May 5, 2002; two were on or about August 16, 2002; and four were on or about August 19, 2002. Government's Exhibits 1 through 7. This is ample evidence to establish that each burglary was committed "on occasions different than one another" as required by § 924(e)(1). Weeks, 711 F. 3d at 1261 (citing cases). Even if the "on or about" can reasonably mean that all burglaries were committed on the same date (which the Court would find is not a reasonable conclusion), burglarizing seven different locations on the same day would still qualify under § 924(e)(1).

Accordingly, it is now

**ORDERED:**

1. Defendant's objection to Paragraphs 14 and 25 is **OVERRULED**.

2. Defendant's objection to Paragraphs 7, 21, and 28 is **OVERRULED**.

3. Defendant's objection to Paragraphs 33, 34, and 42-50 is **OVERRULED**.

4. Defendant's objection to the perjury enhancement is taken under advisement.

5. Pursuant to Fed. R. Crim. P. 32(i)(3)(C), the U.S. Probation Office is directed to append a copy of these determinations to any copy of the Presentence Report made available to the Bureau of Prisons.

**DONE AND ORDERED** at Fort Myers, Florida, this __28th__ day of October, 2013.

_____
JOHN E. STEELE
United States District Judge

Copies:

Counsel of Record
U.S. Probation